# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PAUL MORRIS, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 09-CV-797-JHP-TLW |
| TULSA POLICE DEPARTMENT; J. LAWLESS; S. JONES; C. LAGRONE; M. PARSONS, Sgt.; D. PHILLIPS; J. EDWARDS; and M. FRAZIER, | ) |
| Defendants. | ) |

## OPINION AND ORDER

Before the Court is the motion to dismiss, motion for qualified immunity, and motion to take judicial notice (Dkt. #s 24 and 26) filed by Defendants Lawless, Jones, Lagrone, Parsons, Phillips, Edwards, and Frazier.[1] By Order filed June 16, 2010 (Dkt. # 30), the Court provided notice to the parties that the motion would be adjudicated as a motion for summary judgment. Plaintiff asserts claims under 42 U.S.C. § 1983, alleging that police officers violated his constitutional rights by using excessive force to arrest him. See Dkt. # 1. Defendants have provided a Special Report (Dkt. # 25) and assert that they are entitled to qualified immunity from Plaintiff's claims or, in the alternative, ask the Court to dismiss Plaintiff's claims under Fed. R. Civ. P. 12(b)(6). See Dkt. # 24. Plaintiff filed a response (Dkt. # 32) to Defendants' motion. Defendants filed a reply (Dkt. # 34).

## BACKGROUND

The summary judgment record provided by Defendants includes a supplemental police report. See Dkt. # 25, Ex. 4. Information contained in that report demonstrates that on January 8,

---

[1] Defendant Tulsa Police Department was dismissed from this action on January 22, 2010. See Dkt. # 5.

2008, Tulsa Police Officer Frazier attempted to stop a vehicle driven by Plaintiff Paul Morris for failure to signal a right turn. Although Frazier activated his emergency lights and siren, Plaintiff failed to stop and accelerated to speeds in excess of 65-70 mph. Frazier pursued and observed Plaintiff fail to stop at a stop sign. Plaintiff eventually stopped, exited the vehicle and began to walk away. Frazier ordered him to get back in his vehicle. He did not get back in his vehicle, but returned to it and began rummaging around in it. Frazier ordered Plaintiff several times to walk towards him with his hands behind his back. Plaintiff ignored Frazier's commands. Frazier then pointed his service weapon at Plaintiff and again ordered him to exit the vehicle and put his hands behind his back. As Plaintiff started to comply, Frazier observed that Plaintiff had a white tannish rock substance in his mouth. Based on his experience, Frazier suspected that the substance was crack cocaine. As Frazier began to handcuff him, Plaintiff began to pull away. After being handcuffed and despite orders from Frazier, Plaintiff refused to spit out the cocaine and continued to struggle with Frazier, using his head to strike the policeman in the mouth. Officer Lawless arrived as backup. Plaintiff continued to resist, continued chewing on the substance in his mouth and refused to spit it out. He told the officers they would have to kill him to get him to stop. Lawless used OC ("pepper") spray in an attempt to subdue Plaintiff. The OC spray had no effect. Sergeant Parsons and Officer Edwards arrived at the scene as Frazier extricated himself and went to the hospital for treatment of injuries, including a sprained knee and multiple abrasions, resulting from his struggle with Plaintiff. Plaintiff kicked Parsons in the chest as he continued to resist. Lawless then used a taser in an attempt to subdue Plaintiff. The officers eventually gained control of Plaintiff and took him into custody. Officer Phillips arrived and assisted with placement of leg restraints on Plaintiff. Officer Lagrone was also present at the scene. Once Plaintiff was subdued, Parsons and Lagrone began searching

2

Plaintiff. A plastic bag containing bindles of U.S. currency was found in his right rear jeans pocket. In addition, Lawless recovered suspected narcotics he saw fall out of Plaintiff's mouth. A white powdery substance was also present on Plaintiff's clothes. The material field tested positive for cocaine.

Defendants have also provided Plaintiff's medical records. See Dkt. # 25, Exs. 6, 7, 8, and 9. Those records reflect that Plaintiff was transported to Oklahoma State University Medical Center ("OSUMC") for evaluation. The medical staff was advised that he had ingested an unknown quantity of crack cocaine and that he had been subjected to both OC spray and a taser. After being cleared for release, he was taken to the Tulsa County Jail. Shortly thereafter, he suffered a seizure and was returned to OSUMC where he was admitted to the intensive care unit and treated for an overdose of cocaine.

On January 16, 2008, the Tulsa County District Attorney's Office filed an information charging Plaintiff with possession of a controlled drug (Count 1), two counts of assault and battery of a police officer (Counts 2 and 8), destroying evidence (Count 3), eluding a police officer (Count 4), failure to signal (Count 5), driving with license cancelled/suspended/revoked (Count 6), and failure to stop for stop sign (Count 7), in Case No. CF-2008-238. See Dkt. # 25, Ex. 1. On December 3, 2008, Plaintiff pled guilty to and was convicted of all eight counts. Dkt. # 25, Ex. 11. He was sentenced to 15 years imprisonment and fined $500.00 on each of Counts 1, 2, and 8, with the sentences to be served concurrently, and fined $10.00 for each of the misdemeanor offenses. Id. at

11. Plaintiff did not appeal his convictions or sentences, see Dkt. # 25, Ex. 1, and he is currently in custody at the Northeastern Oklahoma Correctional Center, Vinita, Oklahoma.²

In his complaint, Plaintiff alleges that at the time of his arrest, he suffered "corporal punishment without procedure or opportunity to provide defense." See Dkt. # 1. Defendants have filed a motion for summary judgment and assert, inter alia, that they are entitled to qualified immunity from Plaintiff's claims.

## ANALYSIS

**A. Summary judgment standard**

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). "However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Id. The Court cannot resolve material factual disputes at summary judgment based on conflicting affidavits. Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991). The mere existence of an alleged factual dispute, however,

---

² On December 3, 2008, Plaintiff pled guilty in another case, Tulsa County District Court, Case No. CF-2008-1204, to charges of possession of a controlled drug (Count 1), driving under suspension (Count 2), and failure to stop at a stop sign (Count 3). See Dkt. # 25, Ex 2. Those charges resulted from Plaintiff's arrest, on March 13, 2008, after a traffic stop where he was again found to be in possession of crack cocaine. He was sentenced to 15 years on the felony conviction to be served concurrently with the sentences entered in Case No. CF-2008-238. Id.

4

does not defeat an otherwise properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Only material factual disputes preclude summary judgment; immaterial disputes are irrelevant. Hall, 935 F.2d at 1111. Similarly, affidavits must be based on personal knowledge and set forth facts that would be admissible in evidence. Id. Conclusory or self-serving affidavits are not sufficient. Id. If the evidence, viewed in the light most favorable to the nonmovant, fails to show that there exists a genuine issue of material fact, the moving party is entitled to judgment as a matter of law. See Anderson, 477 U.S. at 250.

Where a pro se plaintiff is a prisoner, a court authorized "Martinez[3] Report" (Special Report) prepared by prison officials may be necessary to aid the Court in determining possible legal bases for relief for unartfully drawn complaints. See Hall, 935 F.2d at 1109. The Court may treat the Martinez Report as an affidavit in support of a motion for summary judgment, but may not accept the factual findings of the report if the plaintiff has presented conflicting evidence. Id. at 1111. The plaintiff's complaint may also be treated as an affidavit if it is sworn under penalty of perjury and states facts based on personal knowledge. Id. The Court must also construe plaintiff's pro se pleadings liberally for purposes of summary judgment. Haines v. Kerner, 404 U.S. 519, 520 (1972). When reviewing a motion for summary judgment it is not the judge's function to weigh the evidence and determine the truth of the matter but only to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249.

In considering Defendants' motion for summary judgment, the Court has examined the complaint (Dkt. # 1), the Special Report (Dkt. # 25), the arguments asserted in the motion for summary judgment (Dkt. # 24), and Plaintiff's response (Dkt. # 32) to the motion for summary

---

[3] Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978).

5

judgment. Plaintiff has not presented evidence to refute the summary judgment evidence provided by Defendants. The Court has considered all these materials insofar as they are related to the constitutional issues raised by Plaintiff.

**B. Plaintiff's claim**

Defendants request summary judgment on Plaintiff's claim or, in the alternative, ask the Court to dismiss Plaintiff's claim under Fed. R. Civ. P. 12(b)(6). Defendants argue that they used a reasonable amount of force to arrest Plaintiff. Plaintiff responds that the pleadings, when taken in their entirely, show that he is entitled to summary judgment. See Dkt. # 32. Plaintiff claims he "was rendered unconscious and had no knowledge of anything that transpired between the point of being handcuffed and beaten and waking up in the Oklahoma State University Hospital three or four days later." See id. at 3.

Defendants contend that the doctrine of qualified immunity warrants summary judgment against Plaintiff on his claim. See Dkt. # 24. The doctrine of qualified immunity shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law. See Pearson v. Callahan, 555 U.S. 223 (2009). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The qualified immunity inquiry requires analysis of two distinct questions: (1) whether, when taken in the light most favorable to the plaintiff as the party asserting the injury, the plaintiff demonstrates sufficient facts to show the public official's conduct violated plaintiff's constitutional rights; and (2) whether the constitutional right alleged to be violated was clearly established at the time of the alleged violation in a sufficiently analogous factual setting. See Saucier v. Katz, 533 U.S. 194, 201 (2001), *abrogated in part by* Pearson, 555 U.S. 223. While it is often desirable to proceed initially

with the first prong, a finding of qualified immunity may be appropriate on either question. See Pearson, 129 S.Ct. at 818. If both inquiries can be met in the affirmative, then the defendant is not entitled to qualified immunity. See Saucier, 533 U .S. at 201.

"In rebutting a qualified immunity claim at the summary judgment level, a plaintiff can no longer rest on the pleadings and the court looks to the evidence before it (in the light most favorable to the plaintiff)." Axson-Flynn v. Johnson, 356 F.3d 1277, 1299 (10th Cir. 2004) (internal citation and quotation marks omitted). "Once the plaintiff makes this showing, the defendant bears the usual burden of a party moving for summary judgment to show that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." Id. at 1299-1300. "More specifically, the defendant must show that there are no material factual disputes as to whether his or her actions were objectively reasonable in light of the law and the information he or she possessed at the time." Id. at 1300. "At all times during this analysis, we evaluate the evidence in the light most favorable to the nonmoving party." Id.

The Court shall adjudicate Plaintiff's single claim as a claim of excessive use of force. Defendants argue that they are entitled to qualified immunity on Plaintiff's claim of excessive force, because they used the minimum amount of force necessary to arrest a suspect attempting to destroy evidence and to avoid a lawful arrest. Dkt. # 24, at 4-8. Plaintiff does not challenge any specific statement of undisputed fact offered by defendants, but he generally argues that the force used by Frazier and Lawless was unreasonable as demonstrated by his alleged loss of consciousness and by the fact that he was no longer a threat to himself, the officers, or the community. Dkt. # 32. Plaintiff also asserts that Parsons, Lagrone, Phillips, and Edwards failed to intervene despite having a reasonable opportunity. Id.

7

Defendants' use of force against Plaintiff is analyzed under the Fourth Amendment which guarantees citizens the right to be free from unreasonable searches and seizures. Graham v. Connor, 490 U.S. 386, 388 (1989); Terry v. Ohio, 392 U.S. 1, 8 (1968). The Fourth Amendment standard governing excessive force claims is well settled. "[L]aw enforcement officers must be 'objectively reasonable' in their searches and seizures." Dixon v. Richer, 922 F.2d 1456, 1461 (10th Cir. 1991). According to the Supreme Court,

> Determining whether force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake . . . . Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight . . . . The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.

Graham, 490 U.S. at 396 (alterations, citations, and quotations omitted). A court "must assess reasonableness from the perspective of a reasonable officer on the scene, 'rather than with the 20/20 vision of hindsight,' and consider that 'police officers . . . make split-second judgments-in circumstances that are tense, uncertain and rapidly evolving-about the amount of force necessary in a particular situation.'" Blossom v. Yarbrough, 429 F.3d 963, 967 (10th Cir. 2005) (quoting Graham, 490 U.S. at 396-97). To evaluate excessive force, the Court views the facts from the perspective of the officer. See Graham, 490 U.S. at 396-97. The focus of the inquiry is on the circumstances as they existed at the moment force was used. Id. In evaluating an excessive force claim, courts are to consider the totality of the circumstances. Jiron v. City of Lakewood, 392 F.3d

410, 414 (10th Cir. 2004) (citing Sevier v. City of Lawrence, 60 F.3d 695, 699 (10th Cir. 1995)).

Although Plaintiff fails to explain how each named defendant allegedly violated his constitutional rights, the summary judgment record described above reflects that Plaintiff wrestled with Frazier and Lawless and that Lawless used OC spray and a taser in an effort to subdue Plaintiff. Applying Graham and considering the totality of the circumstances, the Court finds that Frazier and Lawless used a reasonable amount of force to arrest Plaintiff. The evidence shows that Plaintiff began resisting Frazier when he handcuffed Plaintiff and attempted to remove cocaine from Plaintiff's mouth. Plaintiff used the back of his head to head butt Frazier in the face. Dkt. # 25, Ex. 4 at 2. Plaintiff also kicked Parsons in the chest causing him to fall backwards on the pavement and Plaintiff continued to resist arrest. Id. The struggle at the scene ended after Lawless used a taser to gain control of Plaintiff. Id. Medical records confirm that Plaintiff was treated at OSUMC following the struggle with police officers. See Dkt. # 25, Exs. 6, 7, 8, 9. Contrary to Plaintiff's allegation that he was unconscious, the emergency room report, see Dkt. # 25, Ex. 6, states that "[t]he patient it combative and he is awake." The emergency room report further reflects that after suffering a seizure at the jail, Plaintiff was "very combative" and was "spitting" at the staff. See id. A hood had to be placed over Plaintiff's head to prevent him from spitting on the staff. Id. Although Plaintiff was observed to have "[m]ultiple abrasions and contusions to the right side of the face," see Dkt. # 25, Ex. 7 at 2, the chief complaint requiring medical treatment was "[p]ossible seizure type activity after intentionally ingesting cocaine," see id. at 1.

Several other factors support Defendants' assertion that the use of some force was reasonable to arrest Plaintiff. Plaintiff had attempted to flee and was physically resisting arrest, and both of

9

these factors are relevant. See Marquez v. City of Albuquerque, 399 F.3d 1216, 1220 (10th Cir. 2005). It is clear that it was reasonable for Frazier and Lawless to use some amount of force to arrest Plaintiff and to protect themselves during the encounter. Considering Plaintiff's attempt to flee and combative force used to resist arrest, Plaintiff's ingestion of cocaine to destroy evidence, the minimal physical injuries suffered by Plaintiff, and the tense nature of the situation, the amount of force used by Frazier and Lawless was reasonable under the circumstances and they are entitled to qualified immunity from Plaintiff's excessive force claim.

In addition, Plaintiff fails in his complaint to develop any cause of action against the other police officers who were present at the scene to assist in effecting Plaintiff's arrest and to process evidence. Plaintiff asserts for the first time in his response to the motion for summary judgment, see Dkt. # 32, that "the failure to intervene by Defendant's [sic] Sgt. M. Parsons, C. Lagrone, D. Phillips, and J. Edwards, despite having a reasonable opportunity is what negates the Defendants [sic] relief of qualified immunity."[4] Id. at 4. The Court disagrees. First, the Court has determined above that Frazier and Lawless used a reasonable amount of force under the circumstances. Therefore, the remaining defendants had no cause to intervene. Furthermore, the uncontroverted evidence provided by Defendants reflects that Parsons and Edwards did not arrive until Frazier was leaving the scene to seek medical attention for his injuries suffered during his struggle with Plaintiff. See Dkt. # 25, Ex. 4. At that time, Parsons and Edwards assisted Lawless in attempting to control Plaintiff who continued to resist. Id. Phillips did not arrive until after Plaintiff had been tasered. Id. Phillips assisted with placement of leg restraints on Plaintiff. Id. Lagrone assisted only with recovery of evidence and searching Plaintiff after he had been subdued. Id. Upon review of the

---

[4] Plaintiff never explains how Defendant S. Jones violated his constitutional rights.

summary judgment record, the Court finds that there is no genuine issue of material fact as to the involvement of Parsons, Lagrone, Phillips, Edwards, and Jones, and that those Defendants are entitled to judgment as a matter of law on Plaintiff's claim of excessive use of force.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. Defendants' motion to dismiss, motion for qualified immunity, and motion to take judicial notice (Dkt. #s 24 and 26), adjudicated as a motion for summary judgment based upon qualified immunity, is **granted**.

2. A separate judgment is entered herewith.

**DATED** this 21st day of April, 2011.

James H. Payne
United States District Judge
Northern District of Oklahoma